IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEITH HUDLER JOSEPH,
    Petitioner,

v.                                        Case No. 3:24cv544/MW/MAL

SHERRY SAULSBERRY,
WARDEN FPC PENSACOLA,
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

This case is before me on Keith Hudler Joseph's petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking immediate transfer to prerelease custody or home confinement based on credits he claims to have earned under the First Step Act (FSA) and Second Chance Act (SCA). ECF No. 2 at 5. The Warden filed an answer asserting the petition should be dismissed because Joseph did not exhaust his administrative remedies. ECF No. 9. Joseph did not file a reply. After careful consideration of the petition, the Warden's response, and relevant law, I recommend the § 2241 petition be dismissed as moot and for failure to exhaust administrative remedies. Additionally, Joseph has not shown he would have been entitled to relief on the merits.

I.   BACKGROUND

In June of 2022, Joseph was sentenced to a term of 60 months' imprisonment after his convictions of wire fraud and aggravated identity theft. ECF No. 2 at 2, 7-8; N.D. W. Va, Case 3:20cr16-GROH. Joseph filed his petition, dated October 28, 2024, when he was still incarcerated at the Federal Prison Camp in Pensacola, Florida, but he is currently located at Miami RRM. *See* https://www.bop.gov/inmateloc/. Bureau of Prisons records indicate a projected release date of December 17, 2025. *Id*.

II.   DISCUSSION

In his petition, Joseph contends he is entitled to immediate placement on pre-release custody under the FSA and SCA and he asks that the Court issue an order directing the BOP to designate him to a Residential Reentry Center (RRC) and order his immediate RRC placement, or in the alternative, order immediate transfer to home confinement. ECF No. 2 at 5.

The Warden answered the petition, contending it is subject to dismissal because Joseph did not exhaust his administrative remedies. The Court does not disagree, but also notes Joseph's transfer to prerelease custody has rendered his petition moot, the record does not establish he would have been entitled to relief on the merits, and he has failed to keep the Court apprised of his current address.

### A. The petition is moot.

While this case has been pending, Joseph was transferred to prerelease custody. That relief makes this case moot because "there is nothing left for [the court] to remedy." *Soliman v. United States*, 296 F.3d 1237, 1243 (11th Cir. 2002) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998)); *see also, Singleton v. Neely*, No. 7:22-cv-844, 2023 WL 9550049 (N.D. Ala. Dec. 21, 2023) (finding moot a petition requesting immediate transfer to RRC or home confinement because the petitioner had already received the relief sought), *report and recommendation adopted*, 2024 WL 476949 (N.D. Ala. Feb. 7, 2024). A court order directing the BOP to send Joseph to a halfway house, if the Court had jurisdiction to enter same, would have no effect, as the BOP already sent him to a halfway house. There is no longer meaningful relief that can be granted to Joseph on his petition.[1] Accordingly, I recommend that the petition be dismissed as moot.

### B. Joseph did not exhaust administrative remedies.

If Joseph's petition is not dismissed as moot, I recommend that it be dismissed

---

[1] Joseph's claim only involves his placement in prerelease custody, not early release and placement on supervised release. Because he did not argue that his sentence was improperly calculated, this case is distinguishable from *Shorter v. Warden* where the Eleventh Circuit ruled that a § 2241 petition seeking credit to shorten a **sentence** was not rendered moot upon the petitioner's release because extra time served on the sentence could be used to make an equitable argument to reduce the term of supervised release. *Shorter v. Warden*, 803 F. App'x 332, 334-35 (11th Cir. 2020).

for failure to exhaust administrative remedies.

Prisoners are required to exhaust their administrative remedies before filing a § 2241 petition. *Santiago-Lugo v. Warden*, 785 F.3d 467, 471, 474-75 (11th Cir. 2015). Failure to exhaust is not a jurisdictional defect; rather, it is a defense that a respondent may assert or choose to waive. *Id.* The Warden has not waived the defense in this case.

The BOP's multi-tiered administrative remedy procedure, which includes one level of informal and three levels of formal review, allows an inmate to raise issues related to any aspect of imprisonment. *See* 28 C.F.R. §§ 542.10-542.19. To fully exhaust, an inmate must properly complete each step of the BOP administrative remedy process, which includes complying with the prison's deadlines and procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). A lack of response to an administrative remedy does not prevent an inmate from pursing further relief, because the regulations provide that if the inmate does not receive a response within the time allotted for reply at any level, including extension, the inmate may consider the absence of a response to be a denial at that level. 28 C.F.R. § 542.18.

Exhaustion of administrative remedies is not merely a gratuitous hurdle imposed to inconvenience litigants. Rather, as recognized by the Supreme Court, it serves important purposes. First, it "protects administrative agency authority,"

giving an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotations and citation omitted). Second, it promotes efficiency because claims can sometimes be resolved at the agency level, obviating the need to proceed to federal court. *Id.* "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration." *Id.* (citation omitted).

The Warden has submitted the declaration of her Secretary, Bonnie Scoggins, who avers that Joseph did not exhaust his administrative remedies as to this issue. ECF No. 9-1 at 3. Joseph admits in his petition that he did not exhaust his administrative remedies, although he claims this case presents a dispute of "statutory construction" which is exempt from the exhaustion requirement. ECF No. 2 at 2-3. Joseph's citation to several cases decided in the Third Circuit is not dispositive. ECF No. 2 at 3. As will be discussed in detail below, the statute is clear that there is no enforceable right to a full 365 days of SCA credit. Had Joseph's transfer not rendered the petition moot, it would be subject to dismissal for failure to exhaust because Joseph does not claim that he pursued any remedies. *See Turner v. Burnside,* 541 F.3d 1007, 1082-83 (11th Cir 2008) (discussing two-step analysis for defense of failure to exhaust).

### C. Joseph has not shown he was entitled to earlier transfer to RRC.

Even if the petition had not been rendered moot by Joseph's transfer to prerelease custody and if the petition is not dismissed for failure to exhaust administrative remedies, the Court cannot find any error in the BOP's calculations or award of credits under the FSA or SCA on this record.

Under the FSA, an eligible inmate who successfully participates in evidence-based recidivism reduction programs or productive activities earns time credits to be applied toward placement in prerelease custody (such as a residential reentry center, commonly known as a halfway house or RRC, or home confinement) or toward early release to a term of supervised release. See 18 U.S.C. §§ 3624(g)(1)-(3), 3632(d)(4). One year is the maximum amount of FSA time credits that can be applied toward early release from prison and placement on supervised release. 18 U.S.C. § 3624(g)(3). Additional earned FSA time credits shall be applied toward time in prerelease custody. 18 U.S.C. § 3632(a)(4)(C).

The SCA, on the other hand, provides for placement in prerelease custody for up to 12 months.[2] See 18 U.S.C. § 3624(c)(1). This placement, while possible, is

---

[2] According to the Federal Bureau of Prisons website:

> On March 31, 2025, the Federal Bureau of Prisons (BOP) issued a memorandum announcing limitations on Second Chance Act (SCA) placements in Residential Reentry Centers. Based on concerns about how these limitations impact the population, BOP will not proceed with the planned changes to limit SCA placement

not guaranteed. *Id.* The SCA provides that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621." 18 U.S.C. § 3624(c)(4). Section 3621, in turn, gives the Bureau of Prisons the authority to designate a federal prisoner's place of confinement. 18 U.S.C. § 3621(b). Designation decisions under the SCA are subject to consideration of "the resources of the facility contemplated," 18 U.S.C. § 3621(b)(1), which, as relevant to this case, might reasonably be construed as encompassing bed space. Thus, because of the statutory provisions cited above, Joseph has no enforceable interest in his transfer to prerelease custody at his earliest date of eligibility. At most, any review available would be to determine if the BOP abused its discretion.[3]

---

to 60 days. A new memo was issued today, April 10, 2025, rescinding the previous guidance.

*See* https://www.bop.gov/news/20250410-second-chance-act-sca-placements.jsp.

[3] *See, e.g.*, *Freedland v. MacKelburg,* No. 5:21-cv-56-TKW/MAF, 2021 WL 3624707, at *4 (N.D. Fla. July 23, 2021) (denying habeas petition for failure to exhaust and because petitioner had "not shown the BOP abused its discretion in not allowing his transfer to an RRC" under the SCA), *report and recommendation adopted,* No. 5:21-cv-56-TKW-MAF, 2021 WL 3619928 (N.D. Fla. Aug. 16, 2021); *Bromfield v. Dobbs*, No. 18-CV-22618-SCOLA, 2019 WL 404048, at *5 (S.D. Fla. Jan. 16, 2019) (noting that a 12-month placement under the SCA is not guaranteed, and it is within the discretion of the BOP whether to place a prisoner in an RRC, and if so for how long) (citing cases), *report and recommendation adopted*, No. 18-22618-CIV, 2019 WL 399899 (S.D. Fla. Jan. 31, 2019); *Robinson v. Warden, FCI Danbury*, No. 3:24-CV-1167 (SRU), 2025 WL 777275, at *4 (D. Conn. Mar. 11, 2025) (finding petitioner had no enforceable interest in her transfer to prerelease custody on her earliest date of eligibility under the SCA).

The BOP provides inmates with a multi-page document titled "FSA Time Credit Assessment." This document provides a breakdown of the credits earned under the FSA and credits given under the SCA and how those credits can be applied. Joseph has submitted only one page from his October 15, 2024 FSA Time Credit Assessment (FSA TCA), which reflects the "best case scenario" for his projected release. ECF No. 2 at 6. Joseph's FSA TCA reflects a projected release date of December 17, 2026, and an FSA conditional release date of December 17, 2025, which assumes he earns 365 days. From the FSA TCA it appears Joseph earned 105 additional FSA days which changed his FSA Conditional Placement Date to September 3, 2025. Although the document reflects 365 SCA Conditional Placement Days, this figure is marked with an asterisk, noting that it reflects "Default SCA conditional placement days. This requires a five-factor review!" *Id.* The review occurs under § 3621(b).

Joseph asserts in his petition that he has attached an "individual needs plan-Program Review (Plan)" from his team meeting on July 5, 2024 which states he is "pending immediate designation to a Residential Reentry Center." ECF No. 2 at 2. However, the Plan, as he calls it, is not among his attachments. Therefore, there is no evidence in the record supporting his assertion that he was "entitled" to immediate RRC placement at the time he filed his petition, or earlier transfer to prerelease

custody than what transpired.[4]

### D. Failure to keep court apprised of current address.

The Court advised Joseph in its order dated November 4, 2024, that it was his responsibility to immediately file a notice with the Court in the event of an address change, transfer, or release from custody, and that the failure to do so may result in a recommendation of dismissal of the case. ECF No. 4 at 2. As noted above, Joseph is no longer incarcerated at FCP Pensacola, his address of record, but rather he is under the supervision of RRM Miami. The clerk has not received a notice of change of address, which provides yet another basis for dismissal.

The only address provided on the BOP website for RRM Miami is for Staff Mail. There is no provision for individuals in community custody to receive mail at this or any RRM. Nonetheless, the clerk will also be directed to mail a copy of this recommendation to Joseph at that address.

Accordingly, it is ORDERED:

The clerk is directed to mail a copy of this recommendation to Joseph at his address of record and to: RRM Miami, Residential Reentry Office, 401 N. Miami

---

[4] Additionally, the Warden submitted two Disciplinary Hearing Officer Reports showing that Joseph was found guilty of the offenses of possessing a hazardous tool and fighting with another person on July 25, 2024 and September 6, 2024, respectively. ECF No. 9-1 at 12-19. Either or both of these may have affected the amount of SCA credits for which he was recommended under the five-factor review. 18 U.S.C. § 3621(b)(3).

Avenue, Miami, FL 33128.

And, it is respectfully RECOMMENDED:

1. Joseph's petition under 28 U.S.C. § 2241, ECF No. 2, be DISMISSED as moot and for failure to exhaust administrative remedies, and alternatively DENIED because he has not shown he would have been entitled to relief on the merits

2. The clerk be directed to close the case file.

DONE on April 22, 2025.

s/ *Midori A. Lowry*
Midori A. Lowry
United States Magistrate Judge

## NOTICE TO THE PARTIES

The case was referred to me for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.